## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| GARY KOHLMAN and ALLEN ROBERTS, | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 08 C 5300 |
| VILLAGE OF MIDLOTHIAN, THOMAS MURAWSKI, VINCE SCHAVONE and HAL KAUFMAN, | ) ) ) ) | |
| Defendants. | ) | |

### MEMORANDUM AND ORDER

Plaintiffs Gary Kohlman and Allen Roberts are members of the Hells Angels Motorcycle Club.[1] They contend that the Mayor of Midlothian (defendant Thomas Murawski), Midlothian's Police Chief (defendant Vince Schavone), and a Midlothian police officer (defendant Hal Kaufman) ordered restaurants and bars in Midlothian to refuse to serve the plaintiffs because of their membership in the Hells Angels Motorcycle Club and/or their wearing of Hells Angels insignia and logos. In the plaintiffs' complaint, filed pursuant to 42 U.S.C. § 1983, the plaintiffs assert that the denial of service violates the First and Fourteenth Amendments.[2] The defendants' motion to dismiss is before the court. For the following reasons, the motion is granted, but the plaintiffs are given leave to replead.

---

[1] The court adopts the punctuation convention used by the Hells Angels, who do not include an apostrophe in their name. *See* http://www.hells-angels.com/FAQ.html (last visited on May 7, 2009).

[2] The complaint also contains a state law defamation claim, which the plaintiffs have moved to voluntarily dismiss. This motion is granted.

I.      Background

The following facts are drawn from the plaintiffs' complaint and are accepted as true for the purpose of the motion to dismiss.[3] On June 5, 2008, and other occasions, defendants Thomas Murawski (Midlothian's Mayor), Vince Schavone (Midlothian's Chief of Police), and Hal Kaufman (a Midlothian police officer) met with representatives from Midlothian restaurants and bars. During these meetings, the defendants ordered the restaurants and bars to refuse service to anyone who was a member of the Hells Angels Motorcycle Club and/or was wearing clothing with Hells Angels' insignia or logos.

Plaintiffs Gary Kohlman and Allen Roberts, who are members of the Hells Angels Motorcycle Club, were subsequently refused service by numerous bars and restaurants in Midlothian because of their affiliation with the Hells Angels. Contending that the defendants' order to the bars and restaurants violated the First and Fourteenth Amendments, they filed suit against the Village of Midlothian, Murawski, Schavone, and Kaufman pursuant to 42 U.S.C. § 1983.

II.     Discussion

    A.      Standard of Review for a Rule 12(b)(6) Motion to Dismiss

A plaintiff's complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief" and "fair notice" of the plaintiff's claims and the basis for

---

[3] It is well established that when reviewing a Rule 12(b)(6) motion to dismiss, the court must accept a complaint's factual allegations, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and confine its review to the four corners of the complaint, *Carter v. Stanton*, 405 U.S. 669, 671 (1972). The defendants nevertheless direct the court's attention to an affidavit attached to their motion to dismiss and vigorously champion their own version of the facts, which is diametrically opposed to the facts alleged in the complaint. This is clearly improper, so the court will not consider the defendants' factual allegations for the purposes of the motion to dismiss.

those claims. Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). According to the Seventh Circuit, this language imposes two hurdles. First, the complaint must describe the claim in sufficient detail to give the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *E.E.O.C. v. Concentra Health Servs.*, 496 F.3d 773, 776 (7th Cir. 2007), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. at 555. Second, the factual allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *Id.*

However, "[a] complaint need not allege all, or any, of the facts logically entailed by the claim, and it certainly need not include evidence." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). Instead, a complaint contains enough details if it includes allegations that show that "it is plausible, rather than merely speculative, that he is entitled to relief." *Id*. at 1083 (internal quotations and citations omitted).

Meanwhile, the court is neither bound by the plaintiff's legal characterization of the facts, nor required to ignore facts set forth in the complaint that undermine the plaintiff's claims. *See Scott v. O'Grady*, 975 F.2d 366, 368 (7th Cir. 1992). The court must also assume the truth of all well-pleaded fact, construing the allegations liberally and viewing them in the light most favorable to the plaintiff. *See, e.g., McMath v. City of Gary*, 976 F.2d 1026, 1031 (7th Cir. 1992).

**B.     § 1983 Claims**

Section 1983 creates a federal cause of action for "the deprivation, under color of [state] law, of a citizen's rights, privileges, or immunities secured by the Constitution or laws of the United States." 42 U.S.C. § 1983; *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994). Thus, the plaintiffs' complaint can survive the motion to dismiss only if it: (1) alleges that the defendants

acted under color of state law; and (2) states a colorable constitutional claim.  For the following reasons, the court finds that the complaint alleges state action but fails to state a colorable Equal Protection or First Amendment claim.

 1. **State Action**

The defendants contend that the plaintiffs' § 1983 claims fail as a matter of law based on lack of state action.  Specifically, according to the defendants, the bars and restaurants in Midlothian are private entities, and as such, are free to serve any customers they choose.  It is true that private parties' conduct generally is outside the scope of the Constitution.  *See Columbia Broadcasting System, Inc. v. Democratic National Committee*, 412 U.S. 94, 114 (1973).  The plaintiffs' complaint, however, clearly alleges that the defendants specifically ordered the bars and restaurants in Midlothian to decline to serve the plaintiffs.  The court must, therefore, consider whether private entities following the directions of state actors act under color of state law.  *See Wade v. Byles,* 83 F.3d 902, 904 (7th Cir. 1996), *citing Blum v. Yaretsky,* 457 U.S. 991, 1002 (1982) (to succeed on a § 1983 claims, a plaintiff must show that the state is responsible for the private parties' allegedly unlawful actions).

A private party acts under color of state law when: (1) a "symbiotic relationship" exists between the private actor and the state; (2) "the state commands or encourages the private discriminatory action"; (3) it carries on a traditional public function; or (4) "the involvement of governmental authority aggravates or contributes to the unlawful conduct."  *Id*. (citations omitted).  In situations where the state is alleged to have directed, controlled or encouraged a private party's actions, it can be held liable only "when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the [s]tate."  *Blum v. Yaretsky,* 457 U.S. at 1004.

The complaint in this case alleges that Murawski, Schavone, and Kaufman, acting in their official capacities, "ordered [bars and restaurants in Midlothian] to refuse service to persons who were members of the Hell's [sic] Angels Motorcycle Club and/or wearing clothing, insignia, wording or logs relating to the Hell's [sic] Angels Motorcycle Club." Amended Complaint at ¶ 8. The allegation that Midlothian's Mayor and Chief of Police, as well as a Midlothian police officer, commanded Midlothian bars and restaurants to refuse to serve a designated class of customers supports the inference that the defendants overtly controlled and coerced the actions of the private parties. Accordingly, based on the allegations in the complaint, the court finds that the plaintiffs have sufficiently pleaded the existence of state action.

### 2. Federal Constitutional Claims

Because the complaint adequately alleges state action, the court turns to the merits of the plaintiffs' constitutional claims.[4] In Count I of the amended complaint, the plaintiffs assert a Fourteenth Amendment equal protection claim, contending that the defendants ordered the Midlothian bars and restaurants to discriminate against them due to their affiliation with the Hells Angels. In Count II, the plaintiffs contend that the denial of service at Midlothian bars and restaurants because they belong to the Hells Angels violates their First Amendment rights to freedom of speech, freedom of assembly, and freedom of association.

---

[4] The plaintiffs appear to believe that the court cannot consider "substantive arguments regarding the merits of [their] claims" when it rules on a motion to dismiss. Response at 2, n.1. This is clearly incorrect: when ruling on a Rule 12(b)(6) motion to dismiss, the court must consider whether the well-pleaded allegations of the complaint state a claim for which relief may be granted. *See* Fed. R. Civ. P. 12(b)(6). The court will thus proceed without the views of the plaintiffs, who declined to brief the merits of their claims.

### a. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. If state action is based on membership in a suspect class, it is subject to strict scrutiny and is constitutional only if it serves a compelling state interest. *Vision Church v. Village of Long Grove*, 468 F.3d 975, 1000 (7th Cir. 2006). An entity who treats members or supporters of the Hells Angels differently because of their affiliation with the Hells Angels, however, does not discriminate based on membership in a suspect class. *See St. John's United Church of Christ v. City of Chicago*, 502 F.3d 616, 638 (7th Cir. 2007) (a suspect class either "possesses an immutable characteristic determined solely by the accident of birth" or is "saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command extraordinary protection from the majoritarian political process") (internal citations omitted).

Because no suspect class is at issue, the plaintiffs must allege that: (1) they are members of a protected class; (2) who are otherwise similarly situated to members of an unprotected class; (3) who were treated differently from members of the unprotected class; (4) based on the defendants' discriminatory intent. *See McNabola v. Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir. 1993). With respect to membership in a protected class, the court construes the plaintiffs' complaint as asserting discrimination based on membership in a "class of one."[5] *See*

---

[5] The court reads the complaint as discriminating against the plaintiffs because they are members of the Hells Angels, not because they wore clothing showing their affiliation with the Hells Angels. Thus, the court will focus on discrimination based on plaintiffs' membership in the specified group, as opposed to considering whether the defendants discriminated against the plaintiffs based on the exercise of a fundamental right (*i.e.*, First Amendment speech).

*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000). To maintain an equal protection claim as a class of one, a plaintiff must allege that he was treated differently from others outside the class and that "no rational basis supports the difference in treatment." *Id*. at 564.

"[T]o get past a Rule 12(b)(6) motion to dismiss on a class of one equal protection claim, 'a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications.'" *Flying J Inc. v. City of New Haven*, 549 F.3d 538, 546 (7th Cir. 2008), *quoting Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992). Moreover, according to the Seventh Circuit:

> while the court must presume the truth of all allegations in the complaint when evaluating a Rule 12(b)(6) motion to dismiss, allegations of animus do not overcome the presumption of rationality and the court evaluates those allegations once a plaintiff has pled facts that show the irrationality of the government action in question. This standard reflects the fairly intuitive idea that a given action can have a rational basis and be a perfectly logical action for a government entity to take even if there are facts casting it as one taken out of animosity.

*Id*. at 547 (internal quotations omitted).

Here, the plaintiffs succinctly allege that the defendants acted intentionally and maliciously when they told the Midlothian bars and restaurants to treat them differently based on their affiliation with the Hells Angels. This allegation fails to overcome the presumption of rationality. Indeed, it does not even attempt to address the presumption of rationality. Thus, the plaintiffs' Equal Protection claim (Count I) is dismissed without prejudice to repleading consistent with this opinion.

### b. First Amendment

"In deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play," the court must consider "whether an intent to convey a particularized message was present and whether the likelihood was great that the message would

be understood by those who viewed it." *Spence v. Washington*, 418 U.S. 405, 410-11 (1974). The defendants assert that clothing with Hells Angels logos or insignia does not convey a particularized message that would be understood by people viewing it. At the motion to dismiss stage, the court cannot accept this bald assertion. This is especially true since it is counterintuitive, as it is reasonable to assume that a person viewing individuals wearing Hells Angels' clothing would believe that they were doing so to show their affiliation with, or support of, that group.

Nevertheless, the First Amendment does not guarantee the right to communicate one's views at all times and places, and in all manners. *See Heffron v. International Society for Krishna Consciousness, Inc.*, 452 U.S. 640, 647 (1981). Instead, the right to communicate depends on the type of forum at issue. There are three kinds of fora for First Amendment purposes: traditional public forums, limited public forums and non-public forums. *Perry Education Association v. Perry Local Educators Association*, 460 U.S. 37, 45-46 (1983). Traditional public fora are places "which by long tradition or by government fiat have been devoted to assembly and debate." *Id*. at 45. Limited public fora are places that the state opened for use by the public as a place for expressive activity. *Id*. Finally, nonpublic fora consist of public property that "is not by tradition or designation a forum for public communication." *Id*. at 46. Speech restrictions in nonpublic fora "must not discriminate on the basis of viewpoint and must be reasonable in light of the purpose served by the forum." *Christian Legal Society v. Walker*, 453 F.3d 853, 866 (7th Cir. 2006) (internal citations omitted).

The plaintiffs do not discuss the merits of their First Amendment claims at all. In turn, the defendants merely state that a private business may do as it pleases, and do not address the precedent about non-public fora or discuss the proper standard applicable to private entities

acting at the express direction of state actors. The court declines to craft the parties' arguments for them any more than it has already done. The plaintiffs' First Amendment claim (Count I) is, therefore, dismissed without prejudice to repleading consistent with this opinion.

## III. Conclusion

For the above reasons, defendants' motion to dismiss [#28] is granted, and the plaintiffs' equal protection and first amendment claims (Counts I and II, respectively) are dismissed with leave to replead by June 12, 2009. In addition, the plaintiffs' motion to voluntarily dismiss their defamation claim (Count III) is granted. When drafting their new complaint, the court urges the plaintiffs to attempt to identify the applicable standard governing their constitutional claims and proceed accordingly. With respect to the defendants, the court reminds them that they must accept the plaintiffs' well-pleaded factual allegations when they prepare what appears to be an inevitable motion to dismiss the new version of the complaint.

DATE: May 15, 2009

_____
Blanche M. Manning
United States District Judge