**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **GARY KOHLMAN and ALLEN ROBERTS,** | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **08 C 5300** |
| | ) | |
| **VILLAGE OF MIDLOTHIAN, THOMAS MURAWSKI, VINCE SCHAVONE and HAL KAUFMAN,** | ) ) ) | |
| **Defendants.** | ) | |

## MEMORANDUM AND ORDER

Plaintiffs Gary Kohlman and Allen Roberts are members of the Hells Angels Motorcycle Club.[1] Kohlman and Roberts filed a § 1983 complaint alleging that the Mayor of Midlothian (defendant Thomas Murawski), Midlothian's Police Chief (defendant Vince Schavone), and a Midlothian police officer (defendant Hal Kaufman) ordered restaurants and bars in Midlothian to refuse to serve them because of their Hells Angels' membership and their wearing of Hells Angels' insignia and logos.

The plaintiffs also allege that at least one private establishment complied with this order, violating their rights under the First and Fourteenth Amendments. The defendants' motion for summary judgment is before the court. For the following reasons, the motion is granted in its entirety.

---

[1] As noted in the court's order ruling on the defendants' motion to dismiss, the Hells Angels do not include an apostrophe anyplace in their name, ostensibly because "there are many versions and forms of Hell." *Kohlman v. Village of Midlothian*, No. 08 C 5300, 2009 WL 1381339, at *1 n.1 (N.D. Ill. May 15, 2009), *citing* the Hells Angels FAQ, http://www.hells-angels.com /?HA=faq (last visited on June 27, 2011). The court will thus follow the convention adopted by the Hells Angels and omit the apostrophe, as opposed to calling them the "Hells' Angels."

# I.    Background

## A.    Local Rule 56.1

Under Local Rule 56.1, a party moving for summary judgment must submit a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to judgment as a matter of law. L.R. 56.1(a). The statement of facts must contain short and concise numbered paragraphs accompanied by citations to admissible evidence. *Id.* The opposing party must admit or deny each numbered paragraph and similarly cite to admissible evidence in support. L.R. 56.1(b). Local Rule 56.1 also allows the opposing party to submit a statement of additional material facts that require the denial of the motion for summary judgment. *Id.*

In general, improper denials by the non-movant mean that the movant's facts are deemed admitted to the extent that they are supported by the record. *See Brasic v. Heinemann's Inc.*, 121 F.3d 231, 284 (7th Cir. 1997). Unfortunately for the court, the parties in this case failed to adhere closely to Local Rule 56.1. Thus, they admitted and denied many of the same facts by relying on admissible evidence in support of their version of the facts, but inadmissible hearsay as a basis for denying the corresponding facts offered by the other side. *See Thomas v. Lake County Jail*, No. 08 C 3321, 2010 WL 148621 *1 (N.D. Ill. Jan. 12, 2010) (courts may ignore a denial based on inadmissible evidence).

Nevertheless, there are sufficient facts before the court to forge ahead with the defendants' motion. The court will endeavor to lay out the material facts, taking into consideration the contradictory and disputed facts, and the parties' numerous objections to each others' statements of undisputed facts. With that said, the following facts are derived from the parties' Local Rule 56.1 statements of fact and supporting evidence.

**B.      Facts**

**1.      The Parties**

Plaintiffs Gary Kohlman and Allen Robers are members of the Chicago Chapter of the Hells Angels Motorcycle Club. Both plaintiffs currently reside in Midlothian, Illinois. Defendants Vince Schavone and Hal Kaufman are Midlothian police officers. In mid-2008, defendant Thomas Murawski was Midlothian's mayor and Schavone was the Village's Police Chief. Prior to serving as Police Chief, Schavone worked for the Illinois State Police as a member of the Gang Unit.

**2.      Motorcycle Clubs in Midlothian**

The defendants assert that the Hells Angels are one of a number of motorcycle clubs that congregate in Midlothian and neighboring communities. Other clubs include the Axemen and Tunnel Rats. This case turns on the treatment of the plaintiffs while they were wearing Hells Angels "colors" in Midlothian. Although neither party provided an exact definition of "colors," this term apparently refers to a motorcycle club's logos, symbols, or emblems. The Hells Angels do not permit non-members to wear Hells Angels' colors.

Although it is not mandated by a Village ordinance, a number of bars in Midlothian prohibit patrons from displaying motorcycle club colors. These so-called "no-colors" policies are presumably employed to reduce the potential for conflict between members of rival clubs. For example, Durbin's Pub has a "decade's old" policy forbidding service to individuals wearing colors.[2] On the other hand, some Midlothian bars and clubs welcome bikers wearing their colors. For example, Jack's Place has no dress code and has never turned away a customer wearing motorcycle club colors.

_____

[2] The evidence cited in the plaintiffs' denial of this fact statement does not specifically address this statement or is inadmissible hearsay. However, the plaintiffs' deposition testimony confirms that they were denied service at Durbin's while wearing Hells Angels' colors.

The defendants – especially Schavone – apparently believe that the Hells Angels are a dangerous motorcycle "gang." At a minimum, the defendants contend that their experiences with the Hells Angels over a nearly twenty-year span have left them with a "guarded view" of the Hells Angels and other motorcycle clubs. Defs. Mot. Summ. J. at 1. For example, during the mid-1990s, while Schavone worked for the Illinois State Police, his Gang Unit was called to Midlothian to quell a bomb threat allegedly involving the Hells Angels. Around that same time, members of the Hells Angels were also rumored to be harassing law enforcement officers in Chicago's south suburbs.[3] Other alleged incidents of police harassment and intimidation by Hells Angels in and around Midlothian continued through the early 2000s and into the summer of 2008. Schavone's experiences with the Hells Angels prompted him to warn Murawski about the presence of Hells Angels members in Midlothian in early 2008.

### 3. Midlothian Bars and Restaurants Patronized by Hells Angels' Members

#### a. O'Leary's Pub

O'Leary's Pub is a Midlothian bar owned by Gerald Plowman and his son, Jonathan ("Jon") Plowman. In the summer of 2008, prompted by Schavone's warnings, Murawski organized a meeting with Jon Plowman, Schavone, and Kaufman. The parties strongly disagree over what transpired at the meeting. According to the defendants, Schavone told Plowman that drug sales were rumored to be occurring at O'Leary's. The plaintiffs, on the other hand, assert that Kaufman began the meeting by asking Plowman whether he knew that Hells Angels' members had been hanging out in O'Leary's. It is clear that the conversation eventually turned to motorcycle clubs as the parties agree that Schavone

---

[3] The plaintiffs contend that this statement is hearsay. Although Schavone's testimony would be inadmissible to prove the truth of the matter asserted, it is non-hearsay to the extent that it is offered to show Schavone's state of mind.

warned Plowman against allowing motorcycle club members to wear their colors in O'Learys. Schavone explained to Plowman that rival club members could "take this as a challenge." Defs.' Statement of Facts at ¶ 34. The parties further agree that Schavone eventually warned Plowman that if enough problems at O'Leary's were verified, Schavone would petition Mayor Murawski to remove the bar's liquor license.

The plaintiffs contend – and the defendants deny – that the defendants' threats toward Plowman far exceeded a simple warning that continued problems at O'Leary's could lead to revocation of the bar's liquor license. In his deposition, Plowman testified that Schavone said, "[t]his is not baseball. You do not get three strikes. This will be your only warning. Get rid of the Hells Angels or I will get rid of you." Pls.' Statement of Addl. Facts at ¶ 7. Plowman testified that Schavone further threatened him by making it "very clear" what would happen if O'Leary's continued to serve Hells Angels' members: Schavone allegedly told Plowman he could harass bar patrons by bringing drug-sniffing dogs into O'Leary's or placing a police car in front of the bar during operating hours and arresting exiting patrons. In his deposition, Schavone denied making any of these threats. It is undisputed, however, that Jon Plowman left the meeting believing that the defendants did not want the Hells Angels in Midlothian.

Shortly after this meeting, Gerald Plowman and Murawski engaged in a heated argument in the Mayor's office over Schavone's perceived threats toward Jon Plowman. Gerald Plowman hoped to reason with Murawski because the Hells Angels represented a significant portion of O'Learys' business, but became upset and left before the two reached any agreement. Eventually, Gerald Plowman agreed to have lunch with Schavone to discuss the matter further. At their lunch meeting, Schavone reiterated his general concern about the dangerous nature of motorcycle clubs, but

emphasized that if Plowman was "under the impression that members of the Hells Angels aren't welcome in [O'Leary's] . . . that's a misconception."  Defs.' Statement of Facts at ¶ 44.  Nevertheless, Gerald Plowman, like his son, came away from his meetings with Murawski and Schavone with the "understanding" that if members of the Hells Angels came into O'Leary's, he was to order them to leave and call the police.[4]

Despite all of this, the Plowmans never enacted a dress code or a no-colors policy.  O'Leary's continued to serve members of the Hells Angels as well as members of other motorcycle clubs, and the plaintiffs were never denied service at O'Leary's.  The parties agree that the defendants never followed through on any of their purported threats to Jon Plowman.

### b.    Papa T's

Papa T's Nightclub is a private establishment in Midlothian owned by Randy Spears.  The parties dispute whether Papa T's had a no-colors policy prior to 2008.  According to Spears, since Papa T's opening in 2007, it had a no-colors policy that prevented motorcycle club members from wearing patches and emblems.  Spears also stated that neither he nor (to the best of his knowledge) any of his employees ever met with Midlothian representatives to discuss the Hells Angels.

Spears' affidavit is directly contradicted by former bar manager Paul Panozzo, who signed an affidavit stating that Papa T's did not have a policy barring colors until mid-2008.  According to Panozzo, Papa T's began to deny service in mid-2008 to Hells Angels following a meeting between Spears, Panozzo, Schavone, and another Midlothian official.  During this meeting (which Spears says

---

[4] Gerald Plowman testified that it was his "understanding," after his conversations with the Mayor and the Chief of Police, that if Hells Angels came into O'Leary's, he was "to order them to leave and then call the police so they could arrest them for trespassing."  Defs.' Ex. 8. at pp. 78-79.  In their response to the plaintiffs' statement of additional facts, the defendants' citations to the record do not rebut that this was Plowman's understanding of the conversation.

did not occur), Schavone allegedly aired his concerns about the dangerous nature of the Hells Angels and ordered Spears and Panozzo to call the police if members entered Papa T's.

In May or June of 2008, Roberts and Kohlman visited Papa T's at least once while wearing their Hells Angels colors. After each ordered drinks, they were told by Panozzo that they had to leave. The parties disagree as to whether they were told to leave on a second occasion, but agree that Roberts was embarrassed by the experience. According to Panozzo, although Papa T's denied service to members of the Hells Angels, it continued to serve members of other motorcycle clubs.

### c.  Other Midlothian Establishments

The parties refer to two other Midlothian establishments. Durbin's is a Midlothian bar owned by Jim McAuliffe. The parties have not pointed to evidence showing that McAuliffe or any of his employees were ever approached by the defendants about refusing service to members of motorcycle clubs or gangs. Nevertheless, the parties agree that in June of 2008, Gary Kohlman and two friends were refused service at Durbin's while they were wearing Hells Angels' clothing. The only admissible basis for refusing service in the record indicates that the plaintiffs were denied service based on Durbin's long-standing policy forbidding service to individuals wearing the colors, logos, or emblems of motorcycle clubs.

As mentioned above, Jack's Place, another Midlothian bar, does not have a dress code. The plaintiffs do not contend that they were ever denied service at Jack's Place. According to the bar's owner, Jack Christou, neither he nor any of his employees were ever approached by the defendants about refusing service to members of motorcycle clubs.

## II.     Discussion

The plaintiffs contend that the defendants violated their rights to equal protection and the First Amendment (Counts I and II, respectively).  They also claim that the Village of Midlothian had a municipal policy that violated their rights under the Fourteenth and First Amendments (Count III).  Finally, they seek an order requiring the Village to indemnify the defendants if they are found liable (Count IV).

### A.     Summary Judgment Standard

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir. 1992).  A court should grant a motion for summary judgment only when the record shows that a reasonable jury could not find for the nonmoving party.  *Id.*

To successfully oppose a motion for summary judgment, however, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  Instead, it must demonstrate that a genuine issue of fact exists.  *See id.* at 587; *see also* Fed. R. Civ. P. 56(e) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact" the court may:  (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials — including the facts considered undisputed — show that the movant is entitled to it; or (4) issue any other appropriate order").

**B.     Plaintiffs' § 1983 Claims**

To avoid summary judgment on their § 1983 claims, the plaintiffs must show that: "(1) the conduct complained of was committed by a person acting under color of state law; and (2) the activity deprived [them] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Case v. Milewski*, 327 F.3d 564, 566 (7th Cir. 2003). As discussed below, while the plaintiffs have pointed to evidence sufficient to survive summary judgment on the state action prong, they cannot show that the defendants violated their equal protection and First Amendment rights.

**1.     State Action**

The plaintiffs challenge private conduct, as they specifically assert that private establishments denied service. "As a general rule, the conduct of private parties lies beyond the Constitution's scope." *Air Line Pilots Ass'n, Intern. v. Dept. of Aviation of City of Chicago*, 45 F.3d 1144, 1149 (7th Cir. 1995). Nevertheless, in certain situations, the conduct of private actors can constitute state action. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 815-16 (7th Cir. 2009). Specifically, where a "sufficiently close nexus" exists between the state and private conduct, the conduct becomes state action for purposes of constitutional rights and § 1983.[5] *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974).

A "sufficiently close nexus" between state action and private conduct may exist when state officials exercise "coercive power" over a private actor or provide the private actor with "significant encouragement, either overt or covert." *Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982); *see also Adickes*

---

[5] In *Lugar v. Edmonson Oil Co., Inc.*, the Supreme Court explained that, "in a § 1983 action brought against a state official, the statutory requirement of action 'under color of state law' and the 'state action' requirement of the Fourteenth Amendment are identical." 457 U.S. 922, 929 (1982). The parties here have consistently used the term "state action" even in relation to the plaintiffs' § 1983 claims. The court will do the same.

*v. S.H. Kress & Co.*, 398 U.S. 144, 170 (1970) ("a State is responsible for the . . . act of a private party when the State, by its law, has compelled the act."). The plaintiffs argue that state action exists because the defendants threatened and intimidated business owners into refusing to serve them. The defendants, however, contend that they merely provided advice to local businesses about drug and gang problems. The defendants also assert that to the extent that private actors decided to not serve the plaintiffs, they acted alone. The court must thus determine if the plaintiffs have identified sufficient evidence of state action to survive summary judgment.

Determining whether state action exists is a "necessarily fact-bound" determination. *Lugar v. Edmonson Oil Co., Inc.*, 457 U.S. 922, 939 (1982). To establish "coercive power" or "significant encouragement," the plaintiffs must show more than that state officials merely suggested, approved, or acquiesced in the independent initiatives of a private party. *See Blum*, 457 U.S. at 1004-05. Instead, the evidence must show that state officials effectively directed or controlled the actions of a private party so the state was "somehow . . . responsible for the allegedly unlawful actions taken by the private party." *Wade v. Byles*, 83 F.3d 902, 905 (7th Cir. 1996).

### a.     O'Leary's and the Plowmans

In their response to the Defendant's Motion for Summary Judgment, the plaintiffs focus much of their argument on conversations between Midlothian officials and the owners of O'Leary's, Jon and Gerald Plowman. The undisputed facts show that father and son individually met with some or all of the defendants and both came away from those meetings with the belief that village officials did not want the Hells Angels in Midlothian. The parties strongly disagree over the content of these meetings, but it is clear that Gerald Plowman believed that if any Hells Angels showed up at O'Leary's,

defendants Murawski and Schavone wanted him to order the Hells Angels to leave the bar and call the police.

Viewed in the light most favorable to the plaintiffs, the facts show that Murawski and Schavone encouraged the Plowmans to deny service to members of the Hells Angels. Schavone allegedly told Jon Plowman that "the Hells Angels are not going to hang out in Midlothian" and instructed Plowman to "get rid of the Hells Angels or I will get rid of you." (Defs.' Ex. 7 at p. 30.) According to Jon Plowman, Schavone then insinuated that if O'Leary's did not comply, he would harass O'Leary's and its patrons or try to get O'Leary's liquor license revoked. Moreover, when Gerald Plowman met with Murawski, Murawski became agitated, accused Plowman of being "the reason this California [expletive deleted] came to Midlothian in the first place," and told Plowman that "[t]he Hells Angels are not going to wear their colors in Midlothian."[6] Defs.' Statement of Facts at ¶¶ 38-40; Defs.' Ex. 8 at pp. 38-39.

The plaintiffs concede, however, that the Plowmans never enforced a dress code at O'Leary's, O'Leary's never denied service to members of Hells Angels, and local officials did not follow through on the alleged threats against the Plowmans and O'Leary's. Further, even if Murawski and Schavone's statements and conduct toward the Plowmans constituted "significant encouragement," the defendants correctly point out that the plaintiffs suffered no particularized harm because they were never denied service at O'Leary's and hence lack standing to challenge this conduct. *See Blum*, 457 U.S. at 1004. Therefore, the facts relating to the Plowmans and O'Learys fail to establish state action.

---

[6] Apparently, the California reference is based on the fact that in 1948, the first Hells Angels Motorcycle Club was founded in the area of Fontana and San Bernadino, California. *See* http://www.hells-angels.com/?HA=history (last visited on June 27, 2011).

### b.     Papa T's, Spears, and Panozzo

The parties also disagree over the facts relating to interactions between Midlothian officials and representatives of Papa T's.  The dispute turns on an alleged meeting between Randy Spears (Papa T's owner), Paul Panozzo (Papa T's then-General Manager), Schavone, and another unnamed Midlothian official in mid-2008 to discuss the Hells Angels.  Pointing to Panozzo's affidavit, the plaintiffs assert that the meeting occurred and Schavone told Spears and Panozzo to call the police if Hells Angels members patronized Papa T's.  According to the plaintiffs, following the meeting Papa T's refused to serve members of the Hells Angels but served members of other motorcycle clubs and denied service to the plaintiffs at least once.  In contrast, the defendants deny that they ever discussed a no-colors policy with representatives of Papa T's and point to Spears' affidavit stating that neither he nor his employees were ever approached by any of the defendants or any other Midlothian official "requesting that he refuse entry and/or service to any member of the Hells Angels Motorcycle Club." Defs.' Statement of Facts at ¶ 11; Defs.' Ex. 4 at ¶¶ 6-8.

The court cannot choose between the competing affidavits at the summary judgment stage.  *See Santiago v. Lane*, 894 F.2d 218, 224 (7th Cir. 1990), *citing Davis v. Zahradnick*, 600 F.2d 458 (4th Cir. 1979) (summary judgment is inappropriate when affidavits require credibility determinations). Thus, the plaintiffs have pointed to evidence of state action that is sufficient to withstand the defendants' motion for summary judgment.

### c.     Hal Kaufman

Kaufman was present at the initial meeting between Jon Plowman (of O'Leary's) and high-ranking Midlothian officials.  As discussed above, the allegations about O'Leary's do not support a conclusion that state action existed.  The plaintiffs present no evidence to support their claim that

Kaufman ordered any private bars and establishments to refuse to serve members of the Hells Angels. Thus, Kaufman is entitled to summary judgment due to the lack of state action as to him. *See, e.g., Truhlar v. U.S. Postal Serv.*, 600 F.3d 888, 893 (7th Cir. 2010) (unsupported speculation is insufficient to overcome summary judgment); *see also Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (plaintiff must present sufficient evidence to support a finding of individual culpability).

### 2.      Deprivation of Rights – Equal Protection & First Amendment

Because the plaintiffs have made a threshold showing of state action as to Papa T's, the court continues on to consider whether Murawski and Schavone's actions and the resulting conduct of Papa T's employees deprived them "of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Case v. Milewski*, 327 F.3d at 566. The plaintiffs allege that their rights were violated in two ways. First, they claim that the:

> [d]efendant's actions in singling out . . . members of a particular organization and in threatening establishments with the revocation of business and liquor licenses in order to force them to comply with the [d]efendant's desires that these establishments refuse service to members of the Hells Angels Motorcycle Club and/or those individuals wearing clothing, insignia, wording or logos relating to the Hells Angels Motorcycle Club violated the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution.

(Pls.' Second Amended Complaint at ¶ 25.)[7] Second, the plaintiffs assert that the defendants' conduct violated their rights under the First Amendment, as applied to the states under the Fourteenth Amendment. Specifically, the plaintiffs contend that their rights to "freedom of association," "to

---

[7] Due to what is most likely a typographical error, the plaintiffs' Second Amended Complaint contains two paragraphs that are numbered 25. This citation is to the first of those two paragraphs.

assemble," "to freedom of speech," and "to be free of unwarranted governmental actions" were

violated by the defendants' conduct.  (Id. at ¶ 25.)[8]

### a.    Equal Protection

In a typical equal protection case, a plaintiff claims that he was the victim of discrimination

based on his membership in a protected class (*e.g.*, race, religion, etc.).  Members of a motorcycle club

do not belong to a protected class.  Alternatively, a plaintiff representing a "class of one" can pursue

discrimination claim under the Equal Protection Clause.  *Ind. Land Co., LLC v. City of Greenwood*,

378 F.3d 705, 712 (7th Cir. 2004); *see also Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)

(per curiam) (the purpose of the Equal Protection Clause is to "secure every person within [a] State's

jurisdiction against intentional and arbitrary discrimination").

To survive summary judgment on a "class of one" equal protection claim, a plaintiff must

come forward with facts showing that (1) the state treated him differently than other similarly situated

individuals and (2) there is no rational basis for the different treatment.[9]  *Hanes v. Zurick*, 578 F.3d

---

[8] This quotation is from the second paragraph 25.

[9] With respect to the second element, the Seventh Circuit has held that a plaintiff need only show
that the defendant lacked a rational basis for treating the plaintiff differently than similarly
situated individuals or worse than less deserving individuals.  *See United States v. Moore*, 543
F.3d 891, 898 (7th Cir. 2008) (collecting cases); *see also Levenstein v. Salafsky*, 414 F.3d 767,
775-76 (7th Cir. 2005); *Indiana Land Co., LLC v. City of Greenwood*, 378 F.3d 705, 713 (7th
Cir. 2004) (Ripple, J., concurring); *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1001 (7th Cir.
2004), *citing Olech*, 528 U.S. at 564.  Other Seventh Circuit cases, however, require a plaintiff to
also show that the defendant's conduct was the product of "totally illegitimate animus" toward
the plaintiff.  *See Moore*, 543 F.3d at 898 (collecting cases); *see also Purze v. Vill. of Winthrop
Harbor*, 286 F.3d 452, 455 (7th Cir. 2002); *Cruz v. Town of Cicero*, 275 F.3d 579, 587 (7th Cir.
2001); *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000); *Bell v. Duperrault*, 367
F.3d 703, 709-13 (7th Cir. 2004) (Posner, J., concurring).  In this case, the court need not decide
whether the plaintiffs must meet the more challenging standard because they have failed "to
make the fundamental showing, under any equal protection standard, that [they were] treated
differently than another similarly situated person," *Levenstein v. Salafsky*, Nos. 95 C 5524, 97 C

491, 494 (7th Cir. 2009).  Here, the court's inquiry begins and ends with the similarly situated requirement.

A plaintiff claiming an equal protection violation under a "class of one" theory must first identify someone who was similarly situated to him but treated differently.  *See Stevo v. Frasor*, No. 07 C 6647, 2001 WL 253963 *10 (N.D. Ill. Jan. 3, 2011).  The "similarly situated" inquiry is generally reserved for the jury.  *McDonald v. Village of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004).  However, when opposing summary judgment, a plaintiff "bears a 'very significant burden' of offering evidence" of a similarly-situated comparator.  *RJB Properties, Inc. v. Board of Ed. of the City of Chi.*, 468 F.3d 1005, 1010 (7th Cir. 2006), *quoting Discovery House, Inc. v. Consolidated City of Indianapolis*, 319 F.3d 27, 283 (7th Cir. 2003).  The comparator must be prima facie identical to the plaintiff in all material respects.  *Purze v. Vill. of Winthrop Harbor*, 286 F.3d 452, 455 (7th Cir. 2002), and "a court may properly grant summary judgment where it is clear that no reasonable jury could find that the similarly situated requirement has been met."  *McDonald*, 371 F.3d at 1002.

The plaintiffs here have failed to identify any individual who was similarly situated but treated differently.  According to the plaintiffs, the defendants:

> ordered and/or coerced employees and/or management of . . . food and
> beverage establishments in the Village of Midlothian to refuse service only to
> individuals wearing clothing, insignia, wording or logos of the Hells Angels
> Motorcycle Club and did not direct these establishments to extend the same
> treatment to individuals wearing clothing, insignia, wording, or logos of
> other motorcycle clubs and/or organizations.

Second Amended Complaint at ¶ 14.

---

3430, 2003 WL 22096486 *18 (N.D. Ill. Sept. 9, 2003), and in any event, a rational basis for the defendants' conduct exists.

Yet, in their response to the defendants' summary judgment, the plaintiffs fail to present any facts supporting their claim that specific similarly situated individuals were treated differently. Instead, they repeatedly assert that it "is for the trier of fact to determine" whether members of the Hells Angels were singled out for discriminatory treatment. Plaintiffs' Response at 12-13. These unsupported assertions are insufficient to withstand summary judgment. *See Keri*, 458 F.3d at 628 (non-moving party cannot withstand summary judgment "by merely resting on its pleadings"); *see also Mucaynski v. Lieblick*, No. 10 C 0081, 2010 WL 3328203 *3 (N.D. Ill. Aug. 19, 2010) (conclusory allegation that plaintiff is similarly situated to other individuals is insufficient). Accordingly, the plaintiffs have failed to carry their burden of demonstrating that others are directly comparable to them. *See Grayson v. O'Neill*, 308 F.3d 808, 817-18 (7th Cir. 2002).

Moreover, even if this court were to credit plaintiffs' general assertions that they were treated differently than members of other motorcycle clubs sporting club couture, they still would not be able to survive summary judgment. Comparators must be identical in all material respects. *Levenstein v. Salafsky*, 414 F.3d 767, 776 (7th Cir. 2005). The defendants contend that members of the Hells Angels and other motorcycle clubs are, in fact, not comparable based on the defendants' "experience with Hells Angels," Defs.' Memorandum at 15, including a rumored threat to destroy a Midlothian bar and an incident where a Midlothian police officer was "almost rammed" by a group of Hells Angels motorcyclists. *Id*. at 1.

Therefore, to establish that members of the Hells Angels and other motorcycle clubs are materially similar, the plaintiffs must point to members of other motorcycle clubs with a similar record of interaction with Midlothian officials and show that they were treated differently. *See, e.g.*, *Bell v. Duperrault*, 367 F.3d 703 (7th Cir. 2004) (comparators were not similarly situated to the plaintiff

because they submitted applications for pier extensions under different review scheme, requested

different extensions, or asked to replace older, existing structures rather than build new ones).

Because the plaintiffs have not identified any specific similarly situated people who were treated

differently, let alone people who are similarly situated in all material respects, their "class of one"

equal protection claim fails.

### b.     First Amendment

The plaintiffs next assert that the defendants' conduct infringed their First Amendment rights.

Specifically, they argue that,"[t]he First Amendment protects [their] freedom of speech (including club

insignia and logos), the right to assemble, and the right to be free of harassment and intimidation by

government officials."  Pls.' Response at 7.  For the reasons below, the defendants are entitled to

summary judgment on each of the plaintiffs' claims.[10]

### i.     Speech

Determining whether speech is constitutionally protected is a question of law that the court

must decide.  *See, e.g., Potts v. City of Lafayette, Ind.*, 121 F.3d 1106, 1110-11 (7th Cir. 1997) ("the

----

[10]  In their Second Amended Complaint, the plaintiffs allege that the defendants:

> violated the Plaintiff's constitutional rights, including, but not limited to, freedom
> of association, the right to assemble, and/or the right to freedom of speech, and/or
> the right to be free of unwarranted governmental actions, and/or the right to be
> free from governmental interference with personal liberties.

(Pls.' Second Amended Complaint at ¶ 25.)  In their response to the defendant's motion for
summary judgment, however, the plaintiffs do not address "the right to be free from unwarranted
governmental actions."  Therefore, this claim is waived or forfeited (depending on whether the
decision to omit this ground was intentional).  In any event, the right to be free from unwarranted
governmental actions generally exists in relation to the right to privacy.  *See generally Planned
Parenthood of Southeastern Penn. v. Casey*, 505 U.S. 833, 851 (1992).  The plaintiffs do not,
and cannot, contend that displaying Hells Angels' insignia implicates their constitutional right to
privacy.

application of the First Amendment to the facts of a particular case is not an issue for a jury to resolve, but is a legal question for the court to decide"). The plaintiffs allege that their "wearing of Hells Angels Motorcycle Club clothing, insignia, wording, or logos" is expressive conduct protected by the First Amendment. Second Amended Complaint at ¶ 26. Conduct, no less than speech, may enjoy First Amendment protection when it is "'sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments.'" *Texas v. Johnson*, 491 U.S. 397, 404 (1989), *quoting Spence v. Washington*, 418 U.S. 405, 409 (1974).

Not all expressive conduct, however, is entitled to protection. *See United States v. O'Brien*, 391 U.S. 367, 376 (1968) ("We cannot accept the view that an apparently limitless variety of conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea"). To establish that their actions are protected by the First Amendment, the plaintiffs must satisfy a two-part test. First, they must demonstrate that they intended to convey a particularized message by wearing Hells Angels' clothing. *See Johnson*, 491 U.S. at 404. Second, they must show that there was a great likelihood that the message would be understood by those who viewed it. *Id.*

In their response to the defendants' motion for summary judgment, the plaintiffs do not identify what, if any, particularized message they intended to convey by visually showing that they belong to the Hells Angels. This leaves the court with the allegation in the second amended complaint that the plaintiffs intended to "convey a particularized message of affiliation with the Hells Angels Motorcycle Club." The court is not obligated to search the record to ascertain the basis for the plaintiffs' First Amendment claim. In any event, during his deposition, plaintiff Allan Roberts expressly disclaimed any intention to convey a particularized message through his donning of Hells Angels clothing and symbols:

Q: [T]oday you are wearing sort of a collared button-down shirt that does bear . . . symbology?

A: Yes.

Q: Okay. Can you tell me a little bit about it in terms of—on your front, it just says "Hells Angels Chicago MC" and then there is what's called a death's head?

A: Yes.

Q: Okay. What do you mean to convey by that symbol . . . ?

A: It is just Hells Angels insignia.

Q: Okay. And are you sending any sort of message by that emblem or patch?

A: No.

Q: Okay. Would you expect anyone who is not a member of the Hells Angels Motorcycle Club to know what message you are sending or not sending?

A: No.

Defs.' Ex. 9 at 17-18.

Based on this evidence, a rational jury could not conclude that the plaintiffs intended to convey a particularized message by displaying Hells Angels' insignia or that there is a great likelihood that any message would be understood by those who viewed it.

The court also notes that when it ruled on the defendants' motion to dismiss, it encouraged the plaintiffs to develop their First Amendment claim in subsequent proceedings. *Kohlman v. Village of Midlothian*, No. 08 C 5300, 2009 WL 1381339 *5 (N.D. Ill. May 15, 2009) ("The plaintiffs do not discuss the merits of the First Amendment claims at all. . . . [T]he court urges the plaintiffs to attempt to identify the applicable standard governing their constitutional claims and proceed accordingly"). The plaintiffs' response to the motion for summary judgment on their First Amendment claim,

however, consists of a citation to *United States v. Grace*, 461 U.S. 171 (1983). The plaintiffs in *Grace*

engaged in "peaceful picketing and leafleting" in a traditional public forum. *Id.* at 176-79. In contrast,

the plaintiffs here wore Hells Angels clothing or displayed Hells Angels insignia in private bars and

restaurants in Midlothian. Thus, their citation to *Grace* is unhelpful. The plaintiffs' expressive

conduct claim, therefore, cannot survive summary judgment.

### ii.        Assembly/Association

Next, the plaintiffs allege that the defendants' conduct interfered with their right to assemble

and associate. Specifically, they argue that "the First Amendment protects the [plaintiffs'] right to

associate with one another and with the Hells Angels Motorcycle Club . . . [and t]he Defendants'

actions of ordering bar owners to refuse service to the Plaintiffs and characterizing their organization

as a gang is in violation of their right to freedom of association." Pls.' Response at 11.

Associational and assembly rights are closely connected to other First Amendment rights. *See*

*Thomas v. Collins*, 323 U.S. 516, 530 (1945) (rights of speech, assembly, association, and petition,

"though not identical, are inseparable"). Although the right to freedom of association is not

specifically mentioned in the First Amendment, courts have long recognized that protection for that

right is a necessary corollary to the First Amendment's other protections. *See Christian Legal Society*

*v. Walker*, 453 F.3d 853, 861 (7th Cir. 2006) ("Implicit in the First Amendment freedoms of speech,

assembly, and petition is the freedom to gather together to express ideas—the freedom to associate").

Because the unmentioned right to associate evolves from rights that are explicitly enumerated

in the First Amendment, protection for that right is limited to associations that engage or seek to

engage in activities protected by the First Amendment. *Wine & Spirits Retailers, Inc. v. Rhode Island*,

418 F.3d 36, 50 (1st Cir. 2005); *see also Klug v. Chi. Sch. Reform Board of Trustees*, 197 F.3d 853,

857 (7th Cir. 1999) (the right to freedom of association grows out of other First Amendment rights that could not be protected unless a correlative freedom to engage in group effort toward those ends is also guaranteed") (internal quotations omitted).

There are "two different sorts of 'freedom of association' that are protected by the United States Constitution." *City of Dallas v. Stanglin*, 490 U.S. 19, 24 (1989). The first is called "intimate association," which involves an individual's choice to enter into and maintain certain human relationships. *See Zablocki v. Redhail*, 434 U.S. 374, 383-86 (1978) (marriage relationship); *Moore v. East Cleveland*, 431 U.S. 494, 503-04 (1977) (close family relationships); *Wisconsin v. Yoder*, 406 U.S. 205, 232 (parent-child relationship). The plaintiffs do not suggest that the defendants' actions impinged on this type of right to associate.

The second type of association protected by the Constitution is "expressive association." Expressive association involves association "for the purpose of engaging in protected speech or religious activities." *Bd. of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 544 (1987); *see also Roberts*, 468 U.S. at 622 (protection for collective "pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends"). The court will assume that the plaintiffs' claim is based on expressive association.

To survive summary judgment on this claim, the plaintiffs must first establish that they were engaged in expressive activity. *See Dale*, 530 U.S. at 655 (to be entitled to protections of the First Amendment, expressive associations must "engage in expressive activity that could be impaired"); *Walker*, 453 F.3d at 862 ("It goes without saying that a group must engage in expressive association in order to avail itself of the First Amendment's protections for expressive association"). The plaintiffs, however, do not identify any expressive activity as they have not pointed to any political, religious, or

other viewpoints advocated or commonly held by members of the Chicago Chapter of the Hells Angels Motorcycle Club. *Cf. NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 911-12 (1982).

The plaintiffs also have not pointed to evidence showing that they have personally, in their capacity as members of the Hells Angels, taken a public position on an issue of political, social, or cultural importance. *Cf. Roberts*, 468 U.S. at 626 ("Over the years, the national and local levels of the [Jaycees] have taken public positions on a number of diverse issues . . . ."). Moreover, no evidence suggests that the plaintiffs intended to engage in expressive activity at Papa T's when they were denied service. *See Klug*, 197 F.3d at 861 (explaining that the First Amendment protects "association for the purpose of expression," and rejecting the plaintiffs' freedom of association claim because "one reads the complaint in vain for clues as to what types of speech" the plaintiff and her allegedly protected association were pursuing). Instead, they appear to have visited Papa T's to socialize, eat, drink, and perhaps listen to an acoustical band or participate in a bean bag tournament in the beer garden. *See* http://www.papats.net/Midlo/BeerGarden.html#Mid (last visited June 27, 2011). The plaintiffs have thus failed to show that they are entitled to a trial on their First Amendment expressive conduct claim.

This conclusion is supported by the Ninth Circuit's decision in *Villegas v. City of Gilroy*, 484 F.3d 1136 (9th Cir. 2007), *reh'g en banc granted by* 503 F.3d 974 (9th Cir. 2007), *aff'd en banc on other grounds by* 541 F.3d 950 (9th Cir. 2008).[11] In that case, "the plaintiffs were members of a

---

[11] The Ninth Circuit ultimately reheard the *Villegas* case *en banc* and affirmed the district court based on grounds other than those relied upon by the original panel. The order granting rehearing *en banc* states, "[t]he three-judge panel opinion shall not be cited as precedent by or to this court or any district court of the Ninth Circuit, except to the extent adopted by the *en banc* court." 503 F.3d at 974. Because this court is located outside the Ninth Circuit, the court finds that the original *Villegas* panel opinion has persuasive value.

motorcycle club [the Top Hatters] whose stated purpose was to ride motorcycles, promote good will among disparate community groups and raise money for charity."  The Ninth Circuit held, "There is no evidence that the plaintiffs' club engaged in the type of expression that the First Amendment was designed to protect. . . .  no evidence in this case [suggests] that the defendants' actions in any way violated the plaintiffs' right to associate with one another or to pursue their stated purposes of riding motorcycles, giving to charity and promoting good will."  *Id.* at 1142.

Like the plaintiffs in *Villegas*, the plaintiffs here have not identified any way in which the defendants' actions allegedly prevented them from associating with each other or participating in Hells Angels' activities.  *See also Hudson v. City of Los Angeles*, No. CV-06-942-DSF, 2006 WL 4729243, at *7 (C.D. Cal. Sept. 7, 2006) (rejecting motorcycle club member's expressive association claim, as "Plaintiff has failed to allege any facts showing that the motorcycle clubs he associated with were engaged in expressive activity.  Plaintiff has not alleged that any of the clubs advocated anyviewpoints, political, social, or otherwise.  Likewise, Plaintiff has not alleged that the clubs were formed to foster any particular set of beliefs, nor does he allege that they promote any particular lifestyle").  Thus, the defendants are entitled to summary judgment as to the First Amendment expressive conduct claim.

This conclusion is not affected by the plaintiffs' contention that the defendants' apparent attempts to portray the Hells Angels as a "gang" affects their right to associate.  According to the plaintiffs, the Hells Angels are in fact a "club" and members are constitutionally entitled to associate with each other.  Specifically, the plaintiffs argue that:

> [t]he courts have found that the First Amendment protects the right to associate
> with one another and with the Hells Angels Motorcycle Club.  *United States v.*
> *Rubio, et al.*, 727 F.2d. 786, 791 (1983).  In . . . *United States v. O'Reilly*, the

term "gang" was deemed to have such a negative connotation that it could not replace the word "club" in a criminal trial against a member of a motorcycle club. *See United States V. O'Reilly*, 2009 WL 3837877 (2009). The Defendants' statements that the Plaintiffs are members of a gang and must not be served interfere with the Plaintiffs' rights to assemble and freedom of speech. The Defendant's motion concludes that the Hells Angels is a violent gang, but articulates no facts to support this assertion.

Plaintiffs' Response at 11.

This argument, however, misses the mark because there is no constitutional right to "social association." *See City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989) (dance-hall patrons' gathering to engage in recreational dancing is not constitutionally protected even though "[i]t is possible to find some kernel of expression in almost every activity a person undertakes – for example, walking down the street or meeting one's friends at a shopping mall – [as] such a kernel is not sufficient to bring the activity within the protection of the First Amendment"). Thus, the court need not determine if the Hells Angels are a gang or a club, as the relevant inquiry is whether the plaintiffs have engaged in expressive activity that implicates the First Amendment. For the reasons discussed above, the record does not show that there is a triable issue of fact as to this issue.[12]

>    iii.    **Freedom from Harassment and Intimidation by Government Officials**

---

[12] In light of the court's conclusion that the plaintiffs have not shown that they engaged in First Amendment-protected activity, it will not consider whether the defendants are entitled to summary judgment because the plaintiffs sought to assemble in a private establishment. *See generally Lloyd Corp. v. Tanner*, 407 U.S. 551, 568 (1972) (the right to assembly and freedom of association does not extend to private property); *D'Aguanno v. Gallagher*, 50 F.3d 877, 880 (11th Cir. 1995) (while there is a "general First Amendment right to peaceable assembly and freedom of association" there is no "right to pursue such ends on the property of another without the owner's permission").

Approaching the "gang" vs. "club" argument from a different angle, the plaintiffs assert that the defendants':

> [o]rdering the owners of Durbin's, O'Learys and Papa T's not to serve the Plaintiffs and/or other members of the Hells Angels because of the Defendants' claim that the Hells Angels is a gang that is essentially inherently dangerous is a violation of the Plaintiffs' rights on various levels. The mere action of calling a lawful organization a gang violates the members' civil rights.

Plaintiffs' Response at 8.

"[T]he initial step in any § 1983 analysis is to identify the specific constitutional right which was allegedly violated." *Graham v. Connor*, 490 U.S. 386, 394 (1989). The plaintiffs neither cite to authority supporting their contention that calling the Hells Angels a "gang" violates their constitutional rights nor identify the specific constitutional right at issue. The court declines to construct arguments for them.

In any event, it is clearly established that damage to reputation, by itself, is insufficient to state a constitutional claim. *See Paul v. Davis*, 424 U.S. 693, 701 (1976) (injury to reputation, unless accompanied by "some more tangible interests such as employment" is insufficient to invoke the procedural protection of the Due Process Clause). Similarly, even if the defendants in fact harassed the plaintiffs due to their membership in the Hells Angels (an issue which the court need not reach), there is no constitutional right to be free from harassment by state officials. *See Patton v. Przybylski*, 822 F.2d 697, 700 (7th Cir. 1987) (verbal threats do not rise to the level of a constitutional violation); *see also Blanco v. Farley*, No. 09 CV 424, 2011 WL 289435, at *2 (N.D. Ill. Jan. 27, 2011) (collecting cases holding that "verbal harassment or abuse are insufficient grounds on which to state a constitutional deprivation pursuant to § 1983"); *Arnold v. Truemper*, 833 F. Supp. 678, 682 (N.D. Ill. 1993) ("in the absence of an accompanying constitutional injury as a result of the intimidation,

harassment by itself is an insufficient basis for a § 1983 claim"). Therefore, the plaintiffs' claim that police harassment based on their status as Hells Angels members violated their constitutional rights cannot survive summary judgment.

## III.   Conclusion

The court appreciates that the plaintiffs are dissatisfied with the defendants' negative views of the Hells Angels. Nevertheless, the evidence identified by the plaintiffs is insufficient to create a triable issue of fact as to any cognizable constitutional issue. Accordingly, the defendants' motion for summary judgment as to all counts of the plaintiffs' second amended complaint [85] is granted. The clerk is directed to enter a Rule 58 judgment and terminate this case from the court's docket.

DATE:  June 27, 2011

_Blanche M. Manning_
Blanche M. Manning
United States District Judge